UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
                                                               :
                                                               :
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :          **ORDER DENYING**
                                                               :          **MOTIONS FOR BILL OF**
          -against-                                            :          **PARTICULARS, USE OF**
                                                               :          **LAPTOP, AND FOR**
                                                               :          **RECONSIDERATION OF**
BENNIE GRAY,                                                   :          **DETENTION ORDER**
                                                               :
                              Defendant.                       :          3:24-CR-213 (VDO)
                                                               :
------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Defendant Bennie Gray, proceeding *pro se* with the assistance of standby counsel, has filed a number of motions in this pending criminal action. Namely, Gray seeks court orders (1) affording him pretrial release from custody, (2) requiring the United States to produce a bill of particulars, and (3) allowing him the use of a laptop for discovery purposes at a federal detention facility. The Court convened a hearing[1] to address these motions on April 23, 2025, and now denies each in turn.[2]

---

[1] District courts in this Circuit have held that a renewed hearing is not required if the district court can affirm the magistrate judge's findings on the basis of the record, or if the new information supplied as the basis of a challenge to a detention order would not impact the outcome. *See, e.g.*, *United States v. Maxwell*, 510 F. Supp. 3d 165, 169 (S.D.N.Y. 2020). Of course, not every motion related to pretrial detention requires a hearing, so a defendant's pretrial hearing rights are not infinite. However, there is no substitute for in-person hearings in providing the Court the opportunity to engage with the parties. And, further, such hearings create an invaluable record of the basis for court decisions and the development of a case.

[2] Nothing in this Order should be construed to express a view on Gray's guilt or lack thereof.

## I.     **BACKGROUND**

On November 19, 2024, a federal grand jury returned an indictment charging the defendant with possessing with intent to distribute fentanyl and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[3] Prior to Gray's arraignment before a federal judge, the Government sought an order detaining Gray before trial.[4] The Court (Richardson, J.) granted that motion and ordered Gray detained pending trial or further order of the court.[5] Judge Richardson concluded that the nature of the charges against Gray required the application of a rebuttable presumption that no conditions of release would reasonably assure both the safety of the community and Gray's presence at proceedings in this action. Judge Richardson further held that Gray had not rebutted this presumption.[6]

On February 10, 2025, Gray filed a motion to reconsider the detention order on the basis that his state charges—which were the basis for the adopted federal charge—had been dismissed.[7] Judge Richardson again denied Gray's motion.[8] At that time, Judge Richardson concluded, Gray had rebutted the presumption applicable on the basis of the charges against him.[9] But Judge Richardson nonetheless held that the Government had "proven by clear and convincing evidence that Mr. Gray represents a danger to the community."[10] Judge Richardson

---

[3] Indictment, ECF No. 1 at 1 ¶ 1.

[4] Mot. for Pretrial Detention, ECF No. 9.

[5] Ord. of Detention, ECF No. 16.

[6] *Id.* at 2.

[7] Mot. to Reconsider Release, ECF No. 38 at 1–2.

[8] Second Ord. of Detention, ECF No. 42.

[9] *Id.* at 2.

[10] *Id.* at 3.

explained that Gray's proposed third-party custodian (Gray's girlfriend) is "focuse[d] . . . on her children" and that "the proposed custodian's potential monitoring . . . does not convince the Court" that the danger to the community would be mitigated.[11] A few weeks later, Gray again filed for reconsideration of the detention order, this time proposing two bond cosigners and offering his father as a third-party custodian.[12] And, again, Judge Richardson denied his motion.[13]

On March 24, 2025, Gray sought to remove his counsel and to proceed *pro se*.[14] Judge Richardson granted that motion, and Gray is now representing himself with the assistance of standby counsel.[15] Gray has now filed several additional motions.

First, Gray filed for *de novo* review by this Court of Judge Richardson's detention order.[16] He then filed an additional motion challenging the detention order and offering a new third-party custodian and set of conditions of release, proposing that he live at a sober living facility with the director of that facility serving as the third-party custodian.[17]

Second, Gray filed two additional motions related to his preparation for trial. The first of these seeks access to a laptop "to permit discovery review."[18] And the second motion seeks

---

[11] *Id.* at 3.

[12] Second Mot. to Reconsider Release, ECF No. 43 at 1.

[13] ECF No. 50.

[14] ECF No. 53.

[15] ECF No. 66.

[16] ECF No. 59.

[17] ECF No. 60 at 2.

[18] ECF No. 70 at 1.

an order requiring the Government to produce a bill of particulars so that Gray can "identify with sufficient particularity the nature of the charge pending against him."[19]

The Court convened a hearing on April 23, 2025, to address each of these motions, and will now rule on each in turn.

## II.    DISCUSSION

### A.    Gray's Order of Detention

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).[20] A defendant may be detained prior to trial only in compliance with the requirements of the Bail Reform Act of 1984 (the "BRA"). The BRA "requires a court to order the pretrial release of a defendant on a personal recognizance bond 'unless the court determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *United States v. Sabhani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(b)). And courts must "bear in mind that it is only a limited group of offenders who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987).

The BRA requires a court to release a pretrial defendant "subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). But "[a] district court is instructed to order the pretrial detention of

---

[19] ECF No. 74 at 1.

[20] Unless otherwise indicated, this Order omits internal quotation marks and citations from quoted opinions, and adopts alterations contained therein.

a defendant if, after a hearing, the judge 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020) (quoting 18 U.S.C. § 3142(e)(1)).

In making its determination, the Court evaluates the record in light of the factors enumerated in the BRA. Those factors include: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, criminal history, and "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Gray has filed both a motion for *de novo* review of Judge Richardson's denial of his motion for reconsideration and a new reconsideration motion offering different proposals for conditions and living situations. The Court will address both motions at once in the interest of judicial economy.[21] The Court notes that its conclusions are based on its own independent review of the record, briefing, and the oral argument presented at the hearing.[22]

---

[21] Under *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985), this Court must review a magistrate judge's detention order *de novo*. The Court reaches its own independent conclusion and does not "simply defer to the judgment of the magistrate." *Id.*

[22] As an initial matter, the Parties dispute whether Gray is currently subject to a parole hold order by the State of Connecticut, which would render his release from *federal* detention somewhat of a nullity, because federal officials would be required to transfer Gray to state custody. The United

First, the Parties dispute whether Gray is subject to a rebuttable presumption against release due to the charges against him. A defendant may be subject to a "rebuttable presumption" that "no condition or combination of conditions will reasonably assure . . . the safety of the community" in certain cases, including those in which the "judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)." 18 U.S.C. § 3142(e)(3)(A). "This presumption may be rebutted by the defendant, who bears a limited burden of production by coming forward with evidence that he does not pose a danger to the community." *Mattis*, 963 F.3d at 290. But "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id.* at 291.

The Government believes that Gray is subject to this presumption. Gray disagrees. He does not argue that he is not charged under a provision of the Controlled Substances Act (nor could he—the indictment is clear on that point).[23] And he does not contend that those charges are without probable cause. Instead, he argues that the Sentencing Guidelines would subject

---

States Probation Office states that Gray is subject to such a hold; Gray insists that he is not. This dispute, however, is ultimately of no relevance: The Court concludes in this Order that the Government has shown by clear and convincing evidence that Gray cannot be released pursuant to the conditions he offers without posing a danger to the community. Therefore, whether Gray is subject to a hold or not, he cannot be granted pretrial release.

[23] *See* Indictment at 1.

him to less than the ten years in prison, and thus that the presumption does not apply because his "maximum" sentence is less than ten years.[24]

Gray's reading of the statute is incorrect. The question is whether the *statutory* maximum contemplates a maximum sentence of ten years or more: Not, as Gray contends, the upper end of the Guidelines range. This is clear from the text of the statute, which requires that the contemplated offense be one "for which a maximum term of imprisonment of ten years or more *is prescribed in the Controlled Substances Act*." 18 U.S.C. § 3142(e)(3)(A). The statute asks not the length of the sentence recommended by the Guidelines, but rather what the text of the Controlled Substances Act contemplates as a maximum.

In this case, Gray is charged with violating a provision of that act providing that, for defendants like Gray charged related to a schedule II drug, allows for "a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C). Gray, therefore, faces a "maximum term of imprisonment of ten years or more [pursuant to] the Controlled Substances Act" and is subject to the presumption against release.

Gray contends that cases demonstrating that any issue that enhances a sentence beyond a statutory maximum must be sent to a jury prove that the relevant consideration is the upper end of the Guidelines recommendation, rather than the statutory maximum. *See United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004). But these cases do not interpret the text of the BRA, and a Guidelines *recommendation* as to the sentence that might ultimately be imposed is far afield from the "maximum term of imprisonment prescribed by" a given statute. Moreover, the cases Gray cites only affirm the importance of statutory

---

[24] *See* ECF No. 61.

maximums and, certainly, do not render such maximums a nullity. *See, e.g.*, *Tapasco v. United States,* No. 04-CV-6128, 2005 WL 2296518, at *2 (S.D.N.Y. Sept. 21, 2005) (explaining that *Booker* rendered the "Guidelines advisory, permitting courts to consider the [G]uidelines and find facts as long as the sentence imposed does not exceed the statutory maximum.").[25] Therefore, the Court readily concludes that Gray is subject to the rebuttable presumption contained in the BRA.

The Court's ultimate conclusion would not change regardless of whether the Court applied the presumption, however. Gray offers three potential living situations: with his father, his girlfriend, or at a sober-living facility. And Gray proposes conditions including bond co-signers, a curfew, and electronic monitoring.[26] But the Court concludes that Gray's proposals do not come closure to assuring the public's safety as required by Section 3142.

Gray's criminal history and history of misconduct while on forms of supervised release from detention greatly concerns the Court. Gray has an extremely lengthy criminal history, with seven convictions stemming from many arrests, including a conviction for manslaughter with a firearm.[27] And Gray has repeatedly violated the terms of early release, including several narcotics convictions, including those involving the intended sale of narcotics.[28] Relatedly, in

---

[25] Further, it is straightforwardly the case that Courts can depart above the upper bound of a Guidelines range, and therefore that the Guidelines themselves do not determine the maximum sentence a defendant may receive. *See United States v. Ford*, No. 14-CR-476, 2018 WL 9814590, at *2 (S.D.N.Y. Sept. 11, 2018) *("*The Sentencing Guidelines are only advisory, and the Court has discretion to impose a sentence *above* or below the range calculated under the Guidelines." (emphasis added)).

[26] ECF No. 60 at 2.

[27] *See* ECF No. 84-1.

[28] *Id.* at 6–7.

this case, Gray is alleged to have committed the offense underlying this action while on state supervision, a factor that the BRA's text includes as counseling against release.[29]

And the nature of the events charged is significant too. Gray is alleged to have possessed with intent to distribute a substantial amount of fentanyl.[30] Fentanyl is an epidemic that has swept the nation over the past several years and has greatly harmed our communities. Further, the quantity of these drugs proffered by the Government as found on Gray's person and in the car he drove is extremely concerning: more than 250 individual baggies of fentanyl, plus cocaine and mixtures of ketamine and xylazine; like fentanyl, each of these is extraordinarily dangerous. The presence of such lethal drugs—in substantial quantity—raises the specter of substantial harm to the community were Gray, if released, to engage in the sort of activity he now stands accused of.

Also weighing against Gray is the volume and nature of the charges in his past. Gray is convicted of a violent act, one of the most serious violent offenses a defendant can face. The Court discounts this conviction somewhat because of its age; nonetheless, the Court cannot ignore the risk that an individual with such a conviction might present to the community. Lastly, the Court notes that the weight of the evidence against Gray is a factor that, at best for Gray, is in equipoise. The Government argues that it has a strong case against Gray because of the drugs it found on Gray's body and in a vehicle he drove; nonetheless, as courts have recognized, it is difficult to evaluate the Government's case at such an early stage, *see, e.g., United States v. Fama*, No. 13-CR-00234, 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013),

---

[29] *Id.* at 6.

[30] Indictment at 1.

and Gray has filed a lengthy suppression motion related to the search. Still, without the benefit of a suppression hearing and without the ultimate resolution of Gray's suppression motion, the Court cannot conclude that Gray's motion is so strong that this factor weighs in his favor.

Further, each of Gray's proposed living situations is insufficient. Gray's father, for example, has a lengthy criminal record of his own, and his health conditions appear to limit the extent to which he could monitor Gray.[31] Gray's girlfriend has been unresponsive to the USPO across many months and, on the occasions in which she has been responsive, has made clear that she )understandably) would have to focus on her children.[32] Similarly, the sober-living facility is without staff who live in the facility and is, essentially, self-monitored.[33]

Therefore, the Government has easily met its burden to show by clear and convincing evidence that the Defendant would pose a risk of danger to the community if released and that the combination of conditions proposed by the Defendant would not reasonably assure the safety of the community.

Lastly, although the United States represented at the hearing that it was not arguing that Gray was a flight risk, the Court notes that it is not without doubts as to this second path to concluding that detention is not warranted. Gray is facing a potentially lengthy sentence, if convicted. He has struggled to comply with Connecticut parole and probation restrictions in the past—to put it generously—including location monitoring, considered among the best tools

---

[31] Mem. in Opp. at 2.

[32] *Id.* at 12.

[33] The Court has particular concerns about the threat to community safety presented by this option, given Gray's history of convictions for narcotics sales and the lack of monitoring present at the sober living facility.

that a Court can use to ensure the appearance of a defendant. Because the Court cannot be assured that the community will be protected if Gray is released, there is no need to reach a conclusion on this prong, but the Court notes that Gray's history of noncompliance weighs against him on this factor too.

### B.    Bill of Particulars

Gray contends that he requires a bill of particulars to adequately prepare himself for trial.[34] "A court has discretion to require the filing of a bill of particulars if the allegations of the indictment are insufficient to permit the preparation of an adequate defense." *United States v. Rankin*, 422 F. Supp. 3d 564, 594 (D. Conn. 2019). "On the other hand, a court may deny a bill of particulars for any of three reasons: (1) if the allegations of the indictment are enough to serve fair notice, (2) if the information requested is ascertainable from the Government's pre-trial disclosures, or (3) if a defendant does not otherwise show that the information sought is necessary to his preparation of a defense." *Id.* "The proper inquiry . . . is whether the information sought has not been disclosed and is actually necessary—rather than simply helpful—to the defense." *Id.*

At the hearing, Gray seemed to be satisfied that he knew enough about the charges against him after asking for and receiving clarification as to whether the Government was charging him only as to some of the events of the day in question, or as to all. Nonetheless, because the Motion was not explicitly withdrawn, the Court now denies the motion for substantially the reasons set forth in the Government's brief in opposition.[35] Specifically, the

---

[34] ECF No. 74 at 1.

[35] Govt.'s Omnibus Response, ECF No. 83.

Court concludes that the indictment and discovery amply inform Gray of the allegations against him and provide him with far more than is necessary to constitute fair notice. The events giving rise to this action are straightforward, the result of only a single traffic stop, and Gray has received ample discovery, as evidenced in the many exhibits attached to his suppression motion.[36] And Gray has not identified—in his motion or in the hearing—any deficiency in the indictment or in the produced discovery preventing him from adequately understanding the nature of the charges against him and preparing his defense. Therefore, the Court concludes that the Gray is certainly on notice of the allegations against him and denies the motion for a bill of particulars.

### C.    Motion for Access to a Laptop

The Court likewise denies Gray's motion for a laptop for substantially the reasons set forth by the Government in their opposition brief.[37] Gray's case does not appear to have an overly large amount of discovery, and the Court concludes that the computer access already available to federal inmates is sufficient to allow Gray to review discovery and prepare for trial and motion hearings. And, as the Court raised with Gray at the hearing, Gray is able to request access to an investigator, who can visit the detention facility and allow Gray to view discovery outside of the normal limits inmates face. The Court notes that this denial is without prejudice: If Gray believes he cannot adequately prepare for trial despite making full use of all of the avenues to prepare available to him, he may refile his motion. Still, the Court cautions that it is the rare exception that a laptop is required, and usually occurs only in cases with unusually

---

[36] ECF No. 46.

[37] ECF No. 83.

large amounts of discovery; In this action, the Court concludes that the amount of discovery involved does not require access beyond that normally available to federal inmates.

### III.    <u>CONCLUSION</u>

For the reasons set forth above, Gray's motion for a bill of particulars, for a laptop, and his two motions for reconsideration of the order of detention are **denied.**

The Government has previously provided details regarding the state of discovery in this action.[38] Still, on the basis of statements Gray has made about the pace of discovery production, the Court concludes that it must continue to make a record regarding the progress of discovery. The Government is therefore **ordered** to file a status report describing the discovery that has been provided to Gray and the discovery (if any) that remains to be provided **on or before May 7, 2025.** Subsequently, **on or before May 14, 2025,** Gray is **ordered** to file a response describing which pieces of discovery (if any) that the Government represents it has provided he has *not* yet received. The Court further **orders** the Government to file on the docket the letters regarding discovery that it presented to the Court during the aforementioned hearing.

And, as noted during the hearing, the Court **directs** the Parties to the Court's pretrial and trial preferences for the appropriate time to address motions *in limine* and related issues. *See* https://www.ctd.uscourts.gov/content/vernon-d-oliver.

---

[38] Govt.'s Omnibus Response at 5–6.

**SO ORDERED.**

Hartford, Connecticut
April 29, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge